### BEARDEN et al. v. BENNER.

(Circuit Court, S. D. Georgia, W. D.   March 1, 1905.)

1. MARRIAGE SETTLEMENTS—RECORD—STATE LAW.

Code Ga. 1895, § 2483, provides that every marriage contract and every voluntary settlement made by the husband on the wife must be recorded within three months after execution, in order to make it effective as against purchasers and creditors without notice; that, if the contract or settlement is made in another state, and the parties subsequently move within the state, the record must be made within three months after the removal; and, if the settled property be within the state, and the parties reside in another, the record must be made in the county where the property is within the time specified. *Held*, that such section did not require the record of an antenuptial contract between a woman who was a resident and a man who was a nonresident, by which the latter attempted to release certain supposed rights in her property located within the state.

2. SAME—ANTENUPTIAL CONTRACTS—CONSTRUCTION.

An antenuptial contract provided that the husband agreed that all property acquired by his wife should be and remain her separate property, free from his debts, and at her death should vest in her children, if any, living, otherwise it should go to the husband if he survived her, unless she provided a different disposition by will; that the rents and profits of such property should be controlled and managed by the husband for the mutual support of both husband and wife and their children; and that the property might be conveyed for reinvestment by their uniting in the execution of deeds for the same. *Held*, that such contract was merely a recognition of the wife's rights as they then existed, and did not amount to a conveyance by the wife of any interest to the remaindermen.

3. SAME—CONVEYANCES—PARTIES—JOINDER.

Where an antenuptial contract between a husband and wife provided that the wife's separate property might be thereafter conveyed by deed in which both joined, and the husband induced the wife to separately convey the property to a bona fide purchaser without notice of such antenuptial contract, for full value, and the husband was present at the execution of the deed, he was bound in equity to join therein, and could therefore be compelled to do so for the purpose of perfecting the purchaser's title.

See 120 Fed. 690.

James L. Anderson and Walter J. Grace, for complainants.
Washington Dessau, Nathaniel E. Harris, Walter A. Harris, and Pope S. Hill, for respondent.

SPEER, District Judge. While the title to realty involved in this case has been controverted upon pleadings of varying character in the state court, in this court at equity, and again at law, it is now for determination upon pleadings about which there is no dispute, and upon the evidence taken. We have had the final hearing in equity.

The complainants, all sui juris, are the grandchildren of Charles A. Ells, Sr., and the children of his daughter Elizabeth M., who had become the wife of William Morgan Bearden. It appears that Charles A. Ells, Sr., had two children who were beneficiaries of his will. Item 9 thereof made for them the following provision:

"I give and devise to my said two children Elizabeth M. and Charles A. my storehouse and lot on Mulberry street fronting the Lanier House in Macon aforesaid known as Ells Saloon being part of lot No. 6 in square No. 22, in the plan of said city, to be held by them jointly as long as it is for their interest then to be sold and the proceeds to be equally divided between them."

The property thus devised constitutes the premises in dispute in the controversy before the court. Shortly after the probate of this will an antenuptial contract was made between Elizabeth M. Ells and William Morgan Bearden. From this it appears William Morgan Bearden, of the state of Tennessee, in consideration of a marriage about to be solemnized with Elizabeth M. Ells, did

"Covenant, grant and agree that all the property, rights and interests in property of whatsoever nature now vesting in, or hereafter to be acquired by, the said Elizabeth M. Ells, shall be and remain the separate property of the said Elizabeth M. Ells, free from the payment of any debt, default or contract of her husband, during her natural life; and the same at her death to vest in and become the property of such child or children as she may then have living; and should she die without leaving any child or children then the said property to go to the said party of the first part (that is to say William Morgan Bearden) absolutely if her surviving, provided the said Elizabeth M. shall depart this life without making a different disposition of the same by will, which, it is agreed she may at any time do during her life should she so desire. And should she survive the party of the first part and die without then leaving child or children then said property to go to such of her next of kin as would take the same by the laws of this State she dying unmarried. And it is further covenanted and agreed that whilst both the parties hereto remain in life the rents, issues and profits of said property, or so much thereof as may be necessary, shall be controlled and managed by the party of the first part for their mutual support and maintenance and for the support, maintenance and education of the child or children of the marriage. And it is further agreed that should it at any time be deemed advisable by the said parties during their marriage to sell any part of said property for the purpose of reinvesting the proceeds thereof in other like property that the same may be done by their uniting together in the execution of the deed or deeds of conveyance of the same."

This was signed by the contracting parties. The marriage was consummated, and the complainants are the children thereof. In the meantime it became necessary or desirable that William Morgan, and his wife, Elizabeth M., should sell this property. The brother of the wife, Charles A. Ells, having a joint half interest, consented. The

property was sold to the respondent, John H. Benner. The purchase price was $12,000. The deed was executed on the 25th day of November, 1889. It was signed by Mrs. Bearden, née Ells, but was not signed by her husband. He, however, was present, and assented thereto. He took charge of one-half of the proceeds, that being the share of his wife. A part of this he lost in speculation, and a large part he invested in real property and other ventures at Chattanooga, Tenn., where he had now removed with his family. It appears from the evidence that the purchaser had caused no examination of the title on his own account, but he was aware of the fact that Mrs. Bearden, in order to secure a loan on this property, had previously applied to a bank in Macon. He was also aware that she had in writing represented her title to be perfect and free from incumbrance of any character. He knew that the title, examined in behalf of the bank, had been approved by a well-known attorney of the city. He had read Mrs. Bearden's statement with regard to her title. This is in evidence. It is in the handwriting of her husband, William Morgan Bearden, and is signed by her. It also appears that the attorney who examined the record on behalf of the bank had missed the record of the marriage settlement above mentioned. The record, it is true, was incorrect as to the names of the contracting parties. While signed by both of them, in the body of the instrument as recorded it purported to be made by William Morgan, and not by William Morgan Bearden, the word "Bearden" being omitted therefrom. For this reason it is possible, perhaps, that the instrument escaped attention. It does not, however, appear that this record is very significant. The law of Georgia on this subject since 1847 (Code 1895, § 2483) is as follows:

"Every marriage contract and every voluntary settlement made by the husband on the wife, whether in execution of marriage articles or not, must be recorded in the office of the clerk of the superior court of the county of the residence of the husband, within three months after the execution thereof. On failure to comply with this provision such contract or settlement shall not be of any force or effect against a purchaser, or creditor, or surety, who, bona fide and without notice, may become such before the actual recording of the same. If such contract or settlement is made in another state, and the parties subsequently move into this state, the record must be made within three months from such removal. If the settled property be in this state, and the parties reside in another, then the record must be made in the county where the property is, and within the time specified above."

From this it does not appear that there is any provision for the record of a marriage settlement made between a woman who is a resident of this state and a man who is a resident of another state. The law itself was enacted before the common-law marital right to the wife's property was denied by statute. Besides, this was not a voluntary settlement made by the husband on the wife. The law of Georgia which was enacted the previous year (Act 1866, Code 1895, § 2474) had at length made the wife's property her own separate estate. Bearden had nothing to settle on his wife. In the opinion of the court, then, this registration does not make obligatory the record of this particular marriage settlement. It was superfluous, and is therefore, in our judgment, not constructive notice to a bona fide purchaser for value,

who had no actual notice. It is not contended that Mr. Benner, who paid a consideration so large for the property in this case, had any actual notice of this antenuptial arrangement. It follows that the equities of the respondent are of that class which receive, wherever possible, the favorable consideration of a court of equity. While it may be true, as contended, that the children did not receive all the benefits possible from the proceeds of their mother's interest in the premises in dispute, this was probably ascribable to the fact that the marriage contract placed the control of her interest in her husband and their father. That they received large benefits is undeniable. That they were deprived of anything is not the fault of Mr. Benner, the respondent. And even if their title was stronger than it is, they would seem equitably estopped from insisting that he should be deprived of the property which he in good faith and with entire integrity bought and paid for, when his money had been so largely expended on their account.

But, was the record of this marriage settlement valid, can it be that by virtue of its provisions these complainants should prevail upon the assertion of their title. We think not. There are in this antenuptial arrangement no apt and apposite words conveying the interest of Elizabeth M. Ells. She merely assents to a conveyance by her husband, and, as we have seen, he had, under the law of Georgia, nothing to convey save his distributive share in her estate in case she died intestate. He simply stipulates that the property shall be and remain the separate property of Elizabeth M. Ells. That right the law had already given her. He stipulates that it should be free from the payment of his debts, etc. From this obligation by the same law she was already exonerated. He stipulates that the property at her death should vest in and become the property of such child or children as she may then have living. But such child or children would take each its or their share in the absence of such a stipulation, and Bearden, by his conveyance, does not strengthen such inheritable right already existing. It is said that this clause might exclude the children of a deceased child. That is true, but the contention is purely academic, for no such child of a deceased child is before the court, or in existence. The agreement also provides that, if she should die without leaving any child or children, the property should go to the party of the first part, namely, William Morgan Bearden, absolutely, if he should then be in life. But this condition the facts also show did not exist, and, besides, the instrument gave her express power of making a different disposition by will. From these recitals it does not appear that this instrument amounts to any valid conveyance by Mrs. Bearden to the alleged remaindermen who are the complainants before the court. The conveyance is from Bearden, and, as we have seen, he had nothing to convey. His act was, in effect, simply a recognition of the law and the rights of the parties as they already existed, and the contract, as far as we have stated it, was to all practical intent wholly unilateral.

Great stress is laid upon the next clause, which is as follows:

"And it is further agreed that should it at any time be deemed advisable by the said parties during their marriage to sell any part of said property

for the purpose of reinvesting the proceeds thereof in other like property, that the same may be done by their uniting together in the execution of the deed or deeds of conveyance of the same."

While the complainants base their principal contention on this clause of the marriage settlement, it is yet conceded by them that, had Bearden united in the deed, the title of the respondent would be unassailable. In our view of this contention, it is not too late to perfect this partially exercised power on his part, and it follows that it is in the power of the court to compel Bearden now to do what in contemplation of equity he ought to have done at the time the wife, at his instance and request, signed the conveyance to Benner. He was present aiding and abetting in the sale. He received the money, and he reinvested it. It is true that she had given him the power to unite in the deed on the face of the papers, if we concede that the marriage settlement conveyed any title out of her. His signature was requisite to the technical completeness of the instrument. Such was his power, and, in view of the evidence, such was also his duty; and it is, in our judgment, clearly competent for this court by its decree to conclusively deny the relief sought by the complainants, or to make the title of the respondent complete, if that should be preferred, by compelling the execution by Bearden of the power intrusted to him, and which, for some purpose, it seems he only partially performed.

Much authority might be cited in support of all these contentions, and there is much else in the case which might be discussed; but it would seem superfluous. The rights of the respondent are based upon the soundest principles of equity and good conscience.

A decree will be rendered in accordance with this finding.